

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cristina Batista de Nobbe, Richard K. Nobbe<br><br>Recurridos<br><br>v.<br><br>Junta de Directores del Condominio Condado Terrace<br><br>Peticionarios | Certiorari<br><br>2012 TSPR 63<br><br>185 DPR ____ |

Número del Caso: CC-2010-1029


Fecha: 3 de abril de 2012


Tribunal de Apelaciones:

      Región Judicial de San Juan Panel IV


Abogado de la Parte Peticionaria:

      Lcdo. Myriam González Pérez


Abogado de la Parte Recurrida:


      Lcdo. José Rolando Santiago Álvarez


Materia: Revisión Administrativa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cristina Batista de Nobbe,
Richard K. Nobbe

    Recurridos

         v.

Junta de Directores del
Condominio Condado Terrace

    Peticionarios

CC-2010-1029

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 3 de abril de 2012.

El presente recurso nos permite resolver, por primera vez, si un área limitada al uso exclusivo de un apartamento es un elemento común limitado. Para el análisis, estudiaremos con detenimiento el Art. 12 de la Ley de Condominios, Ley Núm. 103-2003, 31 L.P.R.A. sec. 1291j. De igual forma, analizaremos si unos titulares podían variar la fachada de su apartamento sin el consentimiento unánime de los demás titulares del condominio.

Evaluadas las controversias, resolvemos, en primer lugar, que erró el foro apelativo intermedio

al revocar la orden de revertir el color de los plafones del techo y las barandas del balcón del piso de los recurridos al color que seleccionó el Consejo de Titulares. En segundo lugar, determinamos que cuando un área es para el disfrute exclusivo de un apartamento, no es un área común, sino privativa.

I

El Condominio Condado Terrace está sometido al régimen de propiedad horizontal desde 1970. Es un condominio exclusivamente residencial que consta de seis pisos de apartamentos. Algunos de esos pisos cuentan con uno o dos apartamentos por piso, para un total de nueve apartamentos en todo el inmueble. Específicamente, el primero, segundo y sexto piso cuentan con dos apartamentos por piso. En cambio, en el piso tercero, cuarto y quinto hay solo un apartamento por piso. Apéndice del recurso, pág. 305.

El origen de la controversia que tenemos ante nos surgió luego de que los esposos Richard K. y Cristina Batista de Nobbe, dueños del único apartamento que ubica en el quinto piso, presentaron el 10 de octubre de 2003 una primera querella ante el D.A.Co (100022346). En ella, los esposos impugnaron varias acciones y omisiones de la Junta de Directores del Condominio Condado Terrace, entre las que figuraban alteraciones múltiples a la fachada. En particular, el matrimonio imputó a la Junta de Directores permitir alteraciones de las ventanas, de los rótulos, de las cortinas de lona; la instalación de extractores que

afectaban el disfrute de su apartamento; no reparar desperfectos en los conductos de electricidad que ocasionaban que la caja de fusibles de su apartamento se inundara. Asimismo, le atribuyó a la Junta de Directores del Condominio Condado Terrace negarse a pagar el dinero producto de las reclamaciones presentadas y aprobadas por el seguro por los daños que ocasionó el Huracán Georges.

El D.A.Co. realizó una vista ocular y varias vistas administrativas. De la vista ocular, y pertinente al caso que nos ocupa, el D.A.Co. se percató de que el matrimonio Nobbe-Batista, al igual que otros titulares, alteraron la fachada del condominio. En particular, el matrimonio Nobbe-Batista cambió el color del plafón del techo y de las barandas del balcón de su piso, sin autorización del Consejo de Titulares. En los otros pisos del Condominio, esos elementos estaban pintados de un color distinto, que seleccionaron todos los titulares. Además, el matrimonio Nobbe-Batista removió la puerta divisoria de dos hojas que abría al recibidor del quinto piso, para que el elevador abriera directamente a su apartamento.

El 12 de agosto de 2004 el D.A.Co. emitió una resolución. En ella, ordenó a la Junta de Directores del Condominio Condado Terrace convocar al Consejo de Titulares a una asamblea para que los titulares determinaran lo que entendieran pertinente con relación a las alteraciones de la fachada del condominio. En reconsideración, el D.A.Co. señaló que no dirimió nada en particular con relación a los

cambios realizados al vestíbulo del quinto piso, por lo que correspondía al Consejo de Titulares expresarse al respecto en la asamblea a convocarse. Aún inconformes, el matrimonio Nobbe-Batista, junto a otra titular, acudieron al Tribunal de Apelaciones. Ese foro, tras revisarla, confirmó la resolución del D.A.Co.

En cumplimiento de lo ordenado por el D.A.Co., el Consejo de Titulares celebró la asamblea extraordinaria. De la minuta surge que el Consejo de Titulares acordó que los esposos Nobbe-Batista revirtieran a su estado original el vestíbulo del quinto piso y sus componentes eléctricos. Además, debían cambiar el color de los techos y de las barandas del balcón de su apartamento.

Nuevamente inconformes, los esposos Nobbe-Batista presentaron una segunda querella ante el D.A.Co (100031240). En síntesis, impugnaron los acuerdos que alcanzó el Consejo de Titulares en la asamblea de 6 de febrero de 2006.

Entretanto, los esposos Nobbe-Batista informaron al D.A.Co. que pintaron el borde de los pasamanos de los balcones del quinto piso del mismo color del resto de los pasamanos y barandas del condominio. Argumentaron que el cambio de color aprobado en el 2002, no contó con el voto unánime de todos los titulares y por lo tanto, no era válido.

Tras varios incidentes procesales, el D.A.Co. emitió resolución el 29 de diciembre de 2009. Respecto al

apartamento del matrimonio Nobbe-Batista, el D.A.Co. concluyó en sus determinaciones de hechos que el "Consejo de Titulares determinó requerir que los colores del plafón del techo y barandas sea igual al del conjunto general del edificio y la restitución del piso 5 del condominio a su estado original, según consta de la escritura matriz y planos del edificio". Apéndice del recurso, pág. 308.

Añadió que

> En el piso 5 ubica únicamente el apartamento de la parte querellante. Existe un pequeño vestíbulo que parece ser un área común limitada. Al abrir la puerta del ascensor existe un portón de rejas con llave en el marco del ascensor, la cual [sic] solo puede ser abierta por la querellante. La querellante removió la puerta doble en madera que existía para dar acceso a su apartamento, e hizo formar parte de su apartamento el vestíbulo, alegando que es un área privada. El piso y las paredes son en mármol, parecido al que existe en el vestíbulo principal del condominio.

Apéndice del recurso, pág. 309.

Además, en el vestíbulo del quinto piso ubica también un armario de mantenimiento que se denominó en la escritura matriz como elemento común limitado.

En cuanto a lo relacionado a devolver el vestíbulo y los componentes eléctricos del quinto piso a su estado original, así como lo referente a la aprobación de los colores de los plafones del techo y las barandas del mismo piso, el D.A.Co. razonó que esos

> asuntos fueron previamente discutidos y adjudicados por este departamento en una querella anterior como que

constituían una alteración de fachada. Como cuestión de hecho, durante la inspección ocular realizada en el mes de noviembre de 2008, el juez administrativo pudo comprobar la existencia actual de estas condiciones tanto en cuanto al hecho de que la parte querellante se ha apropiado del pasillo que claramente constituye un área común limitada conforme la escritura matriz, así como de la diferencia del color tanto del techo como de la baranda del balcón del apartamento de la parte querellante. Esto es una clara violación al artículo 15 de la Ley de condominios [sic], la cual trató de subsanarse convocando al Consejo de Titulares a decidir sobre un asunto el cual requería unanimidad. No obstante, no se alcanzó la unanimidad necesaria votando 7 titulares en contra de que permaneciera la violación existente.

Conforme lo anterior, la impugnación de estos dos asuntos por la parte querellante debe ser desestimada, por no haber conseguido la unanimidad requerida.

Por último, el D.A.Co. no tomó en consideración la moción informativa que presentó el matrimonio referente al cambio de color que hicieron en el borde de los pasamanos de los balcones del quinto piso para conformarlos con el del resto del condominio.

Inconformes otra vez, el matrimonio Nobbe-Batista acudió al Tribunal de Apelaciones. Ese foro revocó la resolución del D.A.Co. En esencia, el foro apelativo intermedio entendió incorrectamente que

la controversia adjudicada en la querella núm. 100022346 es una distinta a la que encierra esta querella. Ahora está en controversia el uso y cambio de colores del vestíbulo del piso 5 que está directamente al frente del ascensor, el color del plafón

del techo de dicho vestíbulo y las barandas
de las escaleras de ese mismo piso.
<u>Apéndice del recurso</u>, pág. 470.

Así pues, luego de evaluar el derecho aplicable y el plano del condominio, el Tribunal de Apelaciones concluyó que "según se desprende del plano que obra en el expediente, el área del vestíbulo es interior [;] no es área exterior del edificio, por lo que no puede catalogarse como fachada lo que no es". <u>Apéndice del recurso</u>, pág. 475. Por su parte, concluyó que el uso del vestíbulo no varió, ya que es un área común limitada al apartamento número cinco. Razonó que lo que cambió fue la intensidad con la que se usaba el área, que ahora "está controlada por una llave que sólo posee el apartamento 5". Íd.

Insatisfechos con esa determinación, la Junta de Directores presentó ante este Tribunal un recurso de *certiorari*. En su recurso, señala que el Tribunal de Apelaciones erró al determinar que la controversia presentada en este recurso no ha sido adjudicada ya que, contrario a la anterior querella, esta no se trata de un asunto de fachada. Señalan que se relaciona con el color del plafón del techo del vestíbulo del quinto piso y las barandas de ese mismo piso, que son elementos internos del inmueble. Además, se le imputa a ese foro ignorar que la escritura matriz define y establece un área de vestíbulo común limitada en el quinto piso, que el matrimonio Nobbe-Batista privatizó al colocar en el marco del elevador un portón de reja que limita su acceso. De igual forma, se

responsabiliza al Tribunal de Apelaciones de ignorar que con la privatización de esa área, el matrimonio Nobbe-Batista utiliza para su beneficio los componentes eléctricos de un área común limitada.

El 15 de abril de 2011 expedimos el auto. Con el beneficio de la comparecencia de ambas partes, pasemos a analizar la controversia ante nos.

II

De entrada, conviene recordar que es norma reiterada por este Tribunal que "las decisiones de los organismos administrativos deben ser consideradas con gran deferencia por los tribunales apelativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les han delegado". Unlimited v. Mun. de Guaynabo, Op. de 15 de diciembre de 2011, 2011 T.S.P.R. 193, 2011 J.T.S. 198, 183 D.P.R. __ (2011), citando a Mun. de San Juan v. C.R.I.M., 178 D.P.R. 163, 175 (2010); Borschow Hosp. v. Jta. de Planificación, 177 D.P.R. 545, 566 (2009); Hatillo Cash & Carry v. A.R.Pe., 173 D.P.R. 934, 954 (2008); Otero v. Toyota, 163 D.P.R. 716, 727 (2005); Rivera Concepción v.. A.R.PE., 152 D.P.R. 116, 122 (2000); Misión Ind. P.R. v. Junta y A.A.A., 142 D.P.R. 656, 672 (1998). Por consiguiente, en el ejercicio de esa deferencia hemos "establecido que las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produzca suficiente evidencia

para derrotarlas". Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 395-396 (2011) citando a Misión Ind. P.R. v. J.P. y A.A.A., supra, págs. 672-673.

Precisamente por esa deferencia hemos advertido que "el criterio bajo el cual un tribunal debe de revisar las determinaciones e interpretaciones de una agencia administrativa es el criterio de razonabilidad". Rebollo v. Yiyi Motors, 161 D.P.R. 69, 76 (2004). Dicho de otro modo, "la revisión judicial de decisiones administrativas se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción". Íd. Véanse, además, Fuertes y otros v. A.R.PE., 134 D.P.R. 947, 953 (1993); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).

Así las cosas, cuando se trata de las determinaciones de hecho de un organismo administrativo "[l]os tribunales no deben intervenir … si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". Pereira Suárez v. Jta. Dir. Cond., Op. de 30 de junio de 2011, 2011 T.S.P.R. 102, 182 D.P.R.___ (2011), citando a Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 397-398 (1999). Para propósito del análisis, debemos entender como evidencia sustancial "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Íd. No obstante lo

anterior, la deferencia que debemos a las determinaciones de hechos de las agencias no es absoluta. Íd.

Ahora bien, las impugnaciones sobre las determinaciones de hechos de la agencia no pueden sustentarse en el vacío. Por eso, hemos reiterado "que quien quiera probar que las determinaciones de hecho de una agencia no se sostienen en el expediente debe demostrar que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión (del organismo administrativo) no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración". Pereira Suárez v. Jta. Dir. Cond., supra, citando a Domínguez v. Caguas Expressway Motors, supra, pág. 398. Véase, además Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686 (1953).

Como vemos, la revisión judicial de una decisión administrativa se resume en tres asuntos: "(1) la concesión del remedio apropiado[;] (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) la revisión completa y absoluta de las conclusiones de derecho". Asoc. FCIAS. v. Caribe Specialty II, 179 D.P.R. 923, 940 (2010), citando a Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279-280 (1999); Sec. 4.5 de la

Ley de Procedimiento Administrativo Uniforme del Estado

Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2175.

Finalmente, cabe señalar

> que las conclusiones de derecho de la
> agencia, distinto de las determinaciones de
> hecho, el tribunal las puede revisar en
> todos sus aspectos, sin sujeción a norma o
> criterio alguno. (citas omitidas.) Esto no
> significa, sin embargo, que al ejercer su
> función revisora, el tribunal pueda
> descartar libremente las conclusiones e
> interpretaciones de la agencia, sustituyendo
> el criterio de ésta por el propio. Al
> contrario, hemos reiterado consistentemente
> —antes y después de la vigencia de la
> L.P.A.U.— que, de ordinario, los tribunales
> deben deferencia a las interpretaciones y
> conclusiones de los organismos
> administrativos.

Rebollo v. Yiyi Motors, supra, pág. 77.

Luego de puntualizar los límites de nuestra revisión

en términos de decisiones administrativas, veamos los

aspectos de la Ley de Condominios, supra, que nos competen

para resolver las controversias que nos ocupan.

III

Desde sus inicios, "[l]a aprobación de la Ley de la

Propiedad Horizontal adelantó el propósito de armonizar el

disfrute de cada apartamento por su titular y las

limitaciones a ese disfrute en interés de la

colectividad". D.A.Co. v. Junta Cond. Sandy Hills, 169

D.P.R. 586, 597 (2006). En otras palabras, subyace en

estos preceptos la necesidad imperiosa de crear "unas

reglas mínimas para el uso y disfrute de cada apartamento"

que "facilit[en] la convivencia entre los titulares de un

inmueble, sin que se intervenga indebidamente con los

derechos individuales de los demás". Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150, 154 (1995). A esos propósitos, nuestro ordenamiento jurídico ha delimitado a lo largo de los años "las mejoras, las modificaciones, las reparaciones y la limpieza que un titular puede llevar a cabo en su apartamento". Íd.

La Ley de Condominios establece unas normas rigurosas para variar la fachada. Esta, por definición, es "el diseño del conjunto arquitectónico y estéticos exterior del edificio, según se desprende de los documentos constitutivos del condominio". Art. 15(e), 31 L.P.R.A. sec. 1291m. Precisamente, las divergencias de gustos por la fachada es uno de los asuntos que con más frecuencia perturban la convivencia en el régimen de propiedad horizontal. Junta Dir. Cond. Montebello v. Torres, supra, pág. 152. Se trata de "una materia en la cual chocan con frecuencia los estilos de vida y gustos individuales de un titular, con los del resto de los propietarios y con la armonía que debe prevalecer en la vida en un condominio". Íd., citando a Junta Dir. Cond. Montebello v. Torres, supra, pág. 155. Por eso, "[l]a prohibición de la alteración de la fachada es una de las más neurálgicas de nuestro ordenamiento". D.A.Co. v. Junta Cond. Sandy Hills, supra, pág. 598.

El Art. 15(e), supra, codifica la norma general para el cambio de la fachada exterior en el régimen de la propiedad horizontal. Al respecto, este señala que

"[n]ingún titular u ocupante podrá, **sin el consentimiento de todos los titulares**, cambiar la forma externa de la fachada, ni decorar las paredes, puertas o ventanas exteriores con colores o tonalidades distintas a las del condominio". Art. 15 (e), supra. Esta prohibición rigurosa que impuso el legislador "parte de la premisa de que tanto la fachada como las demás paredes perimetrales de un edificio son consideradas como bienes de uso común". Junta Dir. Cond. Montebello v. Torres, íd., pág. 155. Por esa razón indicamos en Junta Dir. Cond. Montebello v. Torres, supra, pág. 156, que "el comprador de un apartamento no adquiere la parte de la fachada del edificio donde está su propiedad, sino una proporción indivisa". Estas consideraciones apoyan que "[c]uando un titular viola esta restricción y por su cuenta introduce cambios de trascendencia a la estética o al diseño arquitectónico de un edificio, la junta de directores… [haga] "las oportunas advertencias y apercibimientos a los titulares" y tom[e] las medidas correspondientes para hacer cumplir las restricciones del régimen de propiedad horizontal". Íd., págs. 157-158. Véase, además, 31 L.P.R.A. sec. 1293b-4(a).

Enmarcada la doctrina en cuanto a la alteración de fachada en el régimen de propiedad horizontal, evaluaremos, primeramente, si el matrimonio Nobbe-Batista podía alterar los colores designados para el plafón del techo y las barandas del balcón del quinto piso. Simultánea a esa discusión, analizaremos si el foro

apelativo intermedio erró al concluir que "la controversia adjudicada  en la querella núm. 100022346 es una distinta a la que encierra esta querella[, ya que] [a]hora está en controversia el uso y cambio de colores del vestíbulo del piso 5 que está directamente al frente del ascensor, el color del plafón del techo de dicho vestíbulo y las barandas de las escaleras de ese mismo piso". Apéndice del recurso, pág. 470.

B.   Una lectura integral de la resolución del D.A.Co. y de la totalidad del expediente denotan que el Tribunal de Apelaciones interpretó erróneamente el asunto ante su consideración. Sin lugar a dudas, la controversia sobre los cambios de fachada siempre ha sido por el color de las barandas y el techo del **balcón** del quinto piso. De hecho, del expediente no surge, ni de los planos, que el vestíbulo del piso 5 tenga barandas. Al parecer, la confusión en interpretación del foro apelativo intermedio tuvo su origen en la insuficiencia lingüística de la resolución del D.A.Co. La resolución hizo alusión al color de los techos y barandas "del piso" para referirse "al color tanto del techo como de la baranda del balcón del apartamento". Véase, Apéndice del recurso, pág. 315. El lenguaje que empleó el D.A.Co. pudo deberse a que el piso 5 del inmueble en controversia solo cuenta con el apartamento en el que residen los esposos Nobbe-Batista.

Aclarado lo anterior, veamos entonces si el matrimonio Nobbe-Batista podía mantener el color del techo

y las barandas de los balcones de su apartamento distinto al que acordó el Consejo de Titulares. De la minuta de la asamblea extraordinaria celebrada el 6 de febrero de 2006, surge que se discutió el asunto referente al color de los techos y de las barandas del balcón del piso 5. De igual forma, en ese documento se demuestra que la votación para auscultar si se le permitía mantener las modificaciones al color de los plafones del techo y las barandas de los balcones que realizaron en su apartamento el matrimonio Nobbe-Batista se derrotó siete a dos.

Desde 1995 señalamos en Junta Dir. Cond. Montebello v. Torres, supra, pág. 157, que "uno de los elementos de una fachada que no pueden ser cambiados de forma unilateral por un titular es el balcón del apartamento. Éste constituye una parte importante del diseño arquitectónico y la estética de un edifico". Por consiguiente, la decisión del matrimonio Nobbe-Batista de utilizar un color distinto del que seleccionó el Consejo de Titulares para el techo y las barandas de los balcones del inmueble constituyó una alteración de fachada sin el consentimiento unánime de los titulares que exige la Ley de Condominios.

Los esposos Nobbe-Batista arguyen que el D.A.Co. no "tomó en consideración que el color blanco del plafón de los balcones del piso 5 fue el color aprobado por unanimidad del Consejo de Titulares en el año 1995". Alegato de la Parte Recurrida, pág. 10. Añaden que en el

2002, la "Junta de Directores cambió el color del plafón y de los pasamanos y barandas de los balcones sin contar con el voto unánime del Consejo de Titulares". Íd. Por ello, concluyen que "[n]o es posible invalidar un hecho aprobado anteriormente por unanimidad por uno aprobado por mayoría posteriormente". Su argumentación no nos convence. Los peticionarios no acompañan prueba de sus argumentos. En ausencia de esa prueba, no podemos variar las determinaciones de hechos del D.A.Co. Recordemos que las impugnaciones de las determinaciones de hechos de las agencias administrativas no pueden estar sustentadas en el vacío. Para probar que las determinaciones de hechos no se sostienen en el expediente, se debe demostrar que existe otra prueba en el récord que reduce o menoscaba el peso de la evidencia impugnada. Pereira Suárez v. Jta. Dir. Cond., supra.

Por todo lo anterior, concluimos que incidió el Tribunal de Apelaciones al revocar la resolución de D.A.Co. que desestimó la querella de los esposos Nobbe-Batista sobre este asunto. Ante ese cuadro fáctico, concluimos que debe sostenerse la determinación del foro administrativo con relación al asunto de fachada.

Resuelta la primera controversia, veamos entonces si los esposos Nobbe-Batista podían colocar en el marco del ascensor que da entrada al vestíbulo de su apartamento un portón de rejas con llave que solo ellos pueden abrir.

IV

Recientemente expresamos en S.L.G. Szendrey-Ramos v. Consejo de Titulares, Op. de 29 de diciembre de 2011, 2011 T.S.P.R. 206, 2011 J.T.S. __, 184 D.P.R. __ (2011), que

> [l]a escritura matriz constituye "la fuente vinculante para los condóminos, luego de la Ley". M. J. Godreau, El condominio: El régimen de propiedad horizontal en Puerto Rico, 1ra ed., Río Piedras, Puerto Rico, Editorial Dictum, 1992, pág. 71.

Añadimos que la escritura matriz es

> un estatuto privado --al cual se adhieren los titulares cuando compran sus respectivos apartamentos-- que gobierna a los condóminos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones violen la ley, la moral o el orden público. Consejo Tit. Cond. McKinley Court v. Rullan, 126 D.P.R. 387, 394(1990)(Sentencia). Véase, además, Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973); Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282 (1995).

El Art. 12 de la Ley de Condominios, supra, define los elementos comunes limitados de un inmueble, como "aquellos que se destinen al servicio de cierto número de apartamentos con exclusión de los demás, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamentos de un mismo piso y otros análogos". En palabras del profesor Godreau, el elemento común limitado

> es aquel que se destina para el uso exclusivo de un **número limitado de apartamentos**. Así, por ejemplo, el pasillo de un piso puede designarse como elemento común limitado al uso de los apartamentos de ese piso; la azotea puede ser para el uso de los apartamentos del último piso, o un

patio podrían compartirlo dos o tres apartamientos terreros. (Énfasis nuestro.)

M. Godreau, La Nueva Ley de Condominios, Ed. Dictum, San Juan, 2da ed., 2003, pág. 57.

La práctica notarial exige que las escrituras matrices de los condominios sometidos al régimen de propiedad horizontal contengan enumerados los elementos comunes limitados del inmueble. Ahora bien, como explica el profesor Godreau, la clasificación de un área como elemento común limitado en la escritura matriz no siempre es correcta. Sobre ese particular el profesor Godreau añade y distingue, refiriéndose a los elementos comunes limitados, que

> [l]o que sí queda aclarado es que tiene que tratarse de un **área compartida entre más de un apartamiento.** Con ello debe aclararse la confusión que se refleja en muchas escrituras en las que, por ejemplo, el espacio de estacionamiento que se le adscribe a un apartamiento o el área de patio trasero para el uso exclusivo de tal o cual apartamiento o la azotea reservada para el "penthouse", se catalogan erróneamente como elementos comunes limitados para el disfrute exclusivo de ese apartamiento. **Si un área es para el disfrute exclusivo de un apartamiento, no puede ser común, sino privativa y el área superficial que le corresponda al mal llamado "elemento común" debe computarse como parte integrante del apartamiento.** La nueva Ley aclara, además, que el mantenimiento de los elementos comunes limitados le corresponde únicamente a los apartamientos que disfrutan de ellos. (Énfasis nuestro.)

> Íd., pág. 57.

Este análisis demuestra que aunque en la escritura matriz de un condominio se denomine un área como elemento común limitado, si responde al servicio de un solo

apartamento realmente es un área privativa. En concordancia, lo que exponemos no es otra cosa que lo que en múltiples ocasiones hemos indicado: "el nombre no hace la cosa". Borschow Hosp. v. Jta. de Planificación, supra, pág. 567.

Un estudio de la escritura matriz del Condominio Condado Terrace revela que entre los elementos comunes del inmueble se incluyó el vestíbulo que da entrada al elevador y a las escaleras desde o hacia los apartamentos de cada piso. Sobre el particular reza la escritura matriz:

> COMMON AREAS AND FACILITIES
>
> …
>
> -----(e) The following facilities located in each one of the six (6) upper floors are RESTRICTED COMMON AREAS AND FACILITIES restricted to the apartment units of each respective floor:-------------------------------
> -----------(1) A lobby providing access to the elevator and to the stairway from or to the apartment units on the respective floor.

> Apéndice del recurso, págs. 359,361.

Aunque esa denominación no es incorrecta para los pisos en los que ubique más de un apartamento, ese no es el caso del apartamento de los esposos Nobbe-Batista. Surge de la escritura matriz y de las determinaciones de hechos del D.A.Co. que el quinto piso del Condominio Condado Terrace cuenta con un solo apartamento.[1] Al ser

---

[1] "Los pisos 1, 2 y 6 contienen dos apartamentos por piso. Los pisos 3, 4 y 5 contienen un apartamento por piso".
(continúa...)

así, el área del vestíbulo que da entrada al apartamento de los esposos Nobbe-Batista no puede ser incluida como un área común limitada. Este es el claro ejemplo de lo que explica el profesor Godreau con relación a los mal llamados elementos comunes limitados en las escrituras matrices.

Por otro lado, la Junta de Directores alega que el matrimonio Nobbe-Batista utiliza para su beneficio los componentes eléctricos de un área común limitada. Sin embargo, la Junta de Directores no nos coloca en posición de poder dilucidar tal aseveración. En su recurso de certiorari ante este Tribunal, solo alega en cuanto a los componentes eléctricos que "[e]xiste además, la apropiación de este elemento común limitado para uso privado, el hecho de utilizar energía eléctrica para uso privado cuando es un sistema común que pagan todos lo titulares por parte de la Recurrida…". Recurso de

_____

Apéndice del recurso, pág. 305. Asimismo, dispone la escritura matriz:

> RESIDENTIAL APARTMENT UNITS AND PRIVATE AREAS
>
> The residential apartments are located and numbered as follows:
> …
> …
> …
> …
>
> Fifth Floor Level-Apartment Number Five (5)- type --- Four (4) bedrooms apartment.
> …
> Apéndice del recurso, págs. 349-350.

*certiorari*, pág. 16. Como vemos, nunca especifican a qué componentes eléctricos se refieren y en qué medida los otros titulares aportan a su mantenimiento. Ante la ausencia de alegaciones específicas, no podemos dilucidar la veracidad de esa alegación.

En conclusión, como el vestíbulo del quinto piso es para el disfrute exclusivo del apartamento número cinco, no puede ser común sino privativo. Según explica el Profesor Godreau, esa "área superficial que le corresponda al mal llamado "elemento común" debe computarse como parte integrante del apartamento". M. Godreau, supra, pág. 57. Sin embargo, no está ante nuestra consideración cómo la denominación incorrecta de esa área afecta el porciento de participación en los elementos comunes. Por ello, no podemos resolver ese asunto.

Así pues, el matrimonio Nobbe-Batista podía colocar el portón de reja en el marco del elevador que da entrada a su apartamento. Por este fundamento, el Tribunal de Apelaciones hizo lo correcto al dejar sin efecto la orden del D.A.Co. de devolver el vestíbulo del apartamento a su estado antes de la colocación del portón de rejas. No estamos enmendando la escritura matriz del condominio. Meramente reconocimos que el error en la denominación de un área privativa no autoriza a que se ordene a sus titulares abrirla para el acceso común limitado de los demás condóminos. Esto no afecta la clasificación de las

escaleras como elemento común. <u>Apéndice del recurso</u>, pág. 90.

V

Por los fundamentos expuestos, se dictará una sentencia para modificar la del Tribunal de Apelaciones y confirmar la orden del D.A.Co. de devolver el techo y las barandas del balcón del quinto piso al color seleccionado por el Consejo de Titulares. Además, concluimos que el área del vestíbulo del quinto piso que da entrada al apartamento del matrimonio Nobbe-Batista es privativa. Por consiguiente, se deja en vigor el dictamen del Tribunal de Apelaciones que revocó al D.A.Co. en cuanto a este punto. Así modificada, se confirma la sentencia del Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cristina Batista de Nobbe,
Richard K. Nobbe

     Recurridos

        v.

Junta de Directores del         CC-2010-1029

Condominio Condado Terrace

     Peticionarios


SENTENCIA

En San Juan, Puerto Rico, a 3 de abril de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia se dicta sentencia para modificar la del Tribunal de Apelaciones y confirmar la orden del D.A.Co. de devolver el techo y las barandas del balcón del quinto piso al color seleccionado por el Consejo de Titulares. Además, concluimos que el área del vestíbulo del quinto piso que da entrada al apartamento del matrimonio Nobbe-Batista es privativa. Por consiguiente, se deja en vigor el dictamen del Tribunal de Apelaciones que revocó al D.A.Co. en cuanto a este punto. Así modificada, se confirma la sentencia del Tribunal de Apelaciones.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió opinión de conformidad y disidente.

                         Larissa Ortiz Modestti
             Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cristina Batista Nobbe,
Richard K. Nobbe

Recurridos

v.

CC-2010-1029

Certiorari

Junta de Directores del
Condominio Condado Terrace

Peticionaria

Opinión de conformidad y disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 3 de abril de 2012.

Disiento del análisis de la Opinión mayoritaria que altera y modifica la designación del vestíbulo de un piso como elemento común limitado sin el consentimiento unánime de los titulares. Como resultado, se respalda un cambio en el destino y uso asignado en la escritura constitutiva del régimen de propiedad horizontal sin cumplir con el requisito de unanimidad de los titulares impuesto por la Ley de Condominios, Ley Núm. 103-2003, 31 L.P.R.A. sec. 1291, *et seq.*

De otra parte, estoy conforme con la decisión de la Opinión mayoritaria en la que se confirma al Departamento de Asuntos del

Consumidor (D.A.Co.) para requerir que el color de las barandas y del techo del balcón del apartamento ubicado en el quinto piso del condominio sea igual al seleccionado por el Consejo de Titulares para el resto del inmueble.

**I**

Los hechos del caso ante nuestra consideración constan en la Opinión mayoritaria y demuestran que los esposos Richard K. Nobbe y Cristina Batista de Nobbe, son dueños de un apartamento ubicado en el quinto piso del Condominio Condado Terrace.

Con relación a la controversia ante nos, los esposos Nobbe-Batista cambiaron el color de las barandas y del techo del balcón de su apartamento y removieron la puerta divisoria del vestíbulo de ese piso, para que el ascensor abriera directamente a su apartamento. Estas situaciones propiciaron la convocación de una asamblea extraordinaria el 6 de febrero de 2006. En ésta se acordó que los esposos Nobbe-Batista cambiarían el color del techo y de las barandas del balcón de su apartamento para que fuera igual al elegido por el resto del condominio. Además, se llevó a votación si los cambios realizados por los esposos Nobbe-Batista en el vestíbulo ubicado en el quinto piso podían mantenerse. Sobre este particular, la minuta refleja que de los nueve titulares hubo siete que votaron en contra.

Inconforme, los esposos Nobbe-Batista presentaron una querella ante D.A.Co. En ésta se limitaron a impugnar los acuerdos alcanzados por la mayoría durante la asamblea celebrada el 6 de febrero de 2006. En lo pertinente,

señalaron que no se les permitió mantener las modificaciones en un área de su uso exclusivo aunque ello no afecta la estructura, fachada ni a los demás titulares del condominio. El 29 de diciembre de 2009 la agencia emitió una resolución en la cual desestimó los reclamos de los esposos Nobbe-Batista en torno a la impugnación del color del techo y las barandas del balcón y a las modificaciones del vestíbulo donde ubica su apartamento. A estos efectos, D.A.Co. dispuso que dichos acuerdos requerían la unanimidad de los titulares. La consecuencia de dicha determinación es que los esposos Nobbe-Batista debían cumplir con los acuerdos de la asamblea, por lo que procedía que pintaran el plafón del techo y las barandas de su balcón igual al conjunto general del edificio. Asimismo, debían restituir el vestíbulo del quinto piso del condominio a su estado original, según consta en la escritura matriz y los planos del edificio.

Los esposos Nobbe-Batista acudieron ante el Tribunal de Apelaciones. En esencia, adujeron que D.A.Co. erró al concluir que se apropiaron del vestíbulo de su piso y que las modificaciones realizadas al vestíbulo constituyen un cambio de fachada. El 16 de agosto de 2010 el foro intermedio emitió una sentencia en la que revocó a D.A.Co. Respecto al vestíbulo, el Tribunal de Apelaciones dirimió que su uso no ha variado debido a que sigue siendo un área común de uso limitado al apartamento ubicado en el quinto piso del condominio. El foro intermedio entendió que ha variado la intensidad en el uso del área porque ahora está

controlada por una llave que solo poseen los esposos Nobbe-Batista.

De esta determinación, la Junta de Directores presentó un recurso de *certiorari* ante este Tribunal. Entre los errores señalados, cuestionó el que el Tribunal de Apelaciones ignoró la escritura matriz que define y establece como un elemento común limitado el área del vestíbulo del quinto piso y las acciones de los esposos Nobbe-Batista para privatizar el mismo al colocar un portón de reja que limita el acceso a esa área.

Este Tribunal correctamente confirmó al D.A.Co. con relación a que el color de las barandas y del techo del balcón del apartamento de los esposos Nobbe-Batista debía ser igual al resto del inmueble. No obstante, determinó que el vestíbulo del quinto piso es uno privativo, por lo que los esposos Nobbe-Batista podían colocar el portón de reja en el marco del elevador que da entrada al vestíbulo en cuestión. De esta forma, y en cuanto a este aspecto, la mayoría del Tribunal confirmó la sentencia del Tribunal de Apelaciones que dejó sin efecto la decisión de D.A.Co. que ordenaba a los esposos Nobbe-Batista devolver el vestíbulo del apartamento a su estado original. No avalamos esta última actuación.

## II

El fundamento para nuestro disenso responde a la naturaleza constitutiva del régimen de propiedad horizontal y a lo dispuesto en la Ley de Condominios para

variar el uso y destino de las áreas comprendidas en el inmueble. Veamos.

Reiteradamente hemos reconocido que una de las características del régimen de propiedad horizontal consiste en su naturaleza de carácter voluntario, constitutiva vía la inscripción y catastral. Véanse, Art. 22 al 33 de la Ley de Condominios, 31 L.P.R.A. secs. 1292-1292k; Bravman, González v. Consejo de Titulares, Op. 14 de diciembre de 2011, 2011 T.S.P.R. 189, 183 D.P.R.___ (2011); Consejo Tit. C. Parkside v. MGIC Fin., Corp., 128 D.P.R. 538, 553 (1991); García Larrinua v. Lichtig, 118 D.P.R. 120, 131-133 (1986); Arce v. Caribbean Home Const., Corp., 108 D.P.R. 225, 245, 257-258 (1978); Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582-583 (1973).

La naturaleza constitutiva del régimen de propiedad horizontal recogida en nuestra Ley de Condominios no constituye un simple proceso de formalidad. El propio estatuto exige una expresión de voluntad declarativa dirigida a un fin concreto. A estos fines, se ha expresado que el carácter del título constitutivo está determinado por el citado Art. 2 de la Ley de Condominios al exponer con claridad que los efectos típicos y propios de la horizontalidad se alcanzan con la documentación en escritura pública y su ulterior registración. Es a partir del acto constitutivo que se reconoce al titular el ejercicio de los derechos característicos del régimen especial quedando sometido a las obligaciones inherentes a la horizontalidad. E. Vázquez Bote, Prolegómenos al Régimen

de la Horizontalidad en el Derecho Puertorriqueño, 16 Rev. Der. P.R., 301, 340-341 (1976-1977). Como consecuencia, lo consignado en la escritura matriz gobierna el régimen de horizontalidad y es la fuente a cuyas disposiciones debemos acudir para dirimir cualquier conflicto. Véanse, Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990); Arce v. Caribbean Home Const. Corp., supra, pág. 245.

Uno de los efectos que conlleva las características del régimen de horizontalidad es que los titulares se adhieren y obligan a lo dispuesto en la escritura matriz, ya sea cuando someten el inmueble o cuando adquieren un apartamento en éste. Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 234 (2001); Cond. Prof. S.J. H. Centre v. P.R.F., Inc., 133 D.P.R. 488, 501-502 (1993); Consejo de Titulares v. Vargas, supra, págs. 582-583.

La Ley de Condominios requiere que la escritura pública se inscriba en el Registro de la Propiedad con las constancias de las cabidas de cada apartamento, piezas de que conste, puerta principal de entrada y lugar con el cual inmediatamente comunique, además, de todos los datos necesarios para su identificación. A su vez, el documento público hace constar la superficie de la totalidad de los apartamentos para así fijar los gastos, ganancias y derechos en los elementos comunes. En la escritura matriz se establece el destino de los elementos que configuran el régimen. Conjuntamente con ésta se certifican los planos sometidos al Registro de la Propiedad. Véanse, Arts. 2,

22-25 de la Ley de Condominios, 31 L.P.R.A. secs. 1291, 1292-1292c. Tanto la escritura matriz como los planos presentados al Registro de la Propiedad consagran gráficamente los derechos de los interesados y extienden al ámbito de la fe pública registral las características materiales del inmueble según fueron representadas. Arce v. Caribbean Home Const. Corp., *supra*, págs. 257-258.

La Ley de Condominios ordena que el destino de sus componentes y las limitaciones de uso de las áreas del condominio se plasmen en los documentos constitutivos del régimen. Ello hace indispensable examinar la escritura matriz para determinar el uso al que se han destinado las áreas que conforman el régimen. La ley específicamente establece que la escritura matriz del condominio precisa el destino de toda área del inmueble y la forma en que ésta puede variarse. Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475, 483 (2008). Esta fijación del uso o destino correspondiente constituye una limitación de facultades inherentes al uso y disfrute que se le impone al titular individual en interés de la colectividad. E. Vázquez Bote, Derecho Civil de Puerto Rico, San Juan, Eds. Jurídicas, 1974, Vol. II, pág. 275; Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282, 290 (1995). La Ley de Condominios dispone claramente que **"una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento unánime de los titulares"**. Art. 2 de la Ley de Condominios, *supra*. Véase, Consejo Tit. C. Parkside v. MGIC. Fin. Corp., *supra*, pág. 553.

El requisito de unanimidad contemplado en la Ley de Condominios responde a que la sana convivencia dentro del régimen es esencial para su preservación, por lo que el sistema de horizontalidad en esencia está vinculado al deseo colectivo de todos sus titulares. *Rivera Rodríguez v. Junta Dir. I y II*, *supra*, págs. 490-491. Es la voluntad unánime de los titulares para ceder o variar el uso de los elementos y permitir que éstos se dediquen al disfrute exclusivo y privado de uno o varios apartamentos la que el legislador preservó en la Ley de Condominios. Permitir el cambio en el uso y destino de los elementos sin cumplir con el esquema expuesto –ordenado por mandato legislativo– trastoca la naturaleza de la propiedad horizontal al omitir o evadir el requisito de unanimidad. Véanse, *Rivera Rodríguez v. Junta Dir. I y II*, *supra*, págs. 491-492; *Serrano Muñoz v. Auxilio Mutuo*, 171 D.P.R. 717, 729 (2007); *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, *supra*, pág. 553.

La clasificación de los elementos comunes surge de la Ley de Condominios. Ésta los cataloga en dos tipos: generales y limitados. El estatuto establece que los elementos comunes no podrán ser objeto de acción de división de la comunidad. 31 L.P.R.A. sec. 1291k. En lo pertinente, la Ley de Condominios define los elementos comunes limitados de la forma siguiente:

> **También serán considerados elementos comunes, pero con carácter limitado, siempre que así se acuerde expresamente por la totalidad de los titulares del inmueble, aquellos que se destinen al servicio de cierto número de apartamentos**

**con exclusión de los demás**, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamientos de un mismo piso y otros análogos. Énfasis suplido. 31 L.P.R.A. sec. 1291j.

De lo antes expuesto, surge que los elementos comunes limitados son elementos comunes atados a la voluntad manifiesta unánimemente por los titulares que restringieron el disfrute de éstos a beneficio de ciertos titulares. El mantenimiento y conservación de los elementos comunes limitados corresponde a los titulares a los que fueron destinados. Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k. Ello es cónsono con el principio que recoge la Ley de Condominios sobre voluntariedad en la cual se reconoce que la designación de los elementos responderá a la disposición o estipulación que estimen los integrantes del régimen. A pesar de ello, y en aras de mantener la viabilidad del sistema, el estatuto dispone específicamente las actuaciones que están vedadas a los titulares independientemente de su voluntad. Véase, Art. 11 de la Ley de Condominios, 31 L.P.R.A. sec. 1291i.

La Opinión mayoritaria descansa su dictamen en la definición general que contempla la Ley de Condominios con relación a los elementos comunes de carácter limitado y las expresiones que el profesor M. J. Godreau realiza en su libro La Nueva Ley de Condominios, Ed. Dictum, San Juan, 2da ed. 2003, pág. 57. El profesor Godreau sostiene que existen instancias en las que se catalogan erróneamente áreas para el uso exclusivo de un apartamento

como un elemento común limitado. Así, razona que esa delimitación es incorrecta y que el disfrute por un titular único de un área equivale a que ésta no es común sino privativa de dicho apartamento. Sus expresiones se limitan a señalar que tales áreas deberían considerarse como privativas del apartamento sin expresar cómo se haría una corrección a lo que él considera un catálogo erróneo en la escritura matriz. En el caso de marras, la solución que propone la mayoría de este Tribunal es dictaminar que el área en cuestión es privativa de los esposos Nobbe-Batista por razón de que ésta no constituye un elemento común limitado porque solo aprovecha a los titulares de ese apartamento. Diferimos de tal tesis.

Como expresamos, la Ley de Condominios dispone que los elementos comunes limitados constituyen elementos comunes cuyo uso fue restringido a cierto número de apartamentos por voluntad expresa de todos los titulares. A base de ello no podemos colegir que el hecho aislado de que éstos se hayan destinado, o renunciado su disfrute, para el beneficio exclusivo de un solo apartamento transforme su naturaleza de elemento común a uno privativo. Nótese que el régimen de propiedad horizontal responde a una declaración concreta de la voluntad de todos los titulares que lo conforman recogida en su escritura constitutiva. A estos efectos, los titulares no tuvieron objeción en que el elemento común fuera utilizado por un titular. Sin embargo, ello por sí solo, no significa ni convierte ese elemento común en uno privativo. Mucho menos podemos

inferir que los titulares avalan tal cambio. La decisión que hoy toma la mayoría de este Tribunal abre la puerta a reclamaciones de todo tipo relacionadas con que la designación realizada en la escritura es errónea o no corresponde a la realidad, so pretexto de cambiar el uso y destino adscrito a ésta sin el consentimiento de todos los titulares. Recordemos que una vez fijado ese destino y uso sólo puede ser modificado mediante el consentimiento unánime de los titulares. Art. 2 de la Ley de Condominios, *supra*.

Al revisar la Ley de Condominios no encontramos impedimento alguno para que por medio de la voluntad de todos los titulares se destine un elemento común en beneficio de un solo apartamento. Tampoco existe, como ha expresado el profesor Godreau, una razón de política pública o que violente el sentido de la horizontalidad o el espíritu de nuestra ley en contra de este tipo de acuerdo unánime. Tal es la importancia de la voluntad de los titulares en el régimen de horizontalidad que el propio profesor Godreau ha manifestado que "después de todo no debe olvidarse que los condominios son propiedad privada y que la intervención estatal debería restringirse al mínimo necesario para reglamentar el aspecto ineludible de la convivencia" M. J. Godreau, <u>La privatización de los elementos comunes en los condominios: reflexiones en torno a posibles enmiendas la Ley de Propiedad Horizontal</u>, 66 Rev. Jur. U.P.R. 149, 163 (1996).

Ante esa realidad, no vemos justificación para que la mayoría realice una intervención judicial que omita las disposiciones contenidas en la Ley de Condominios para variar el uso del elemento que nos ocupa. Máxime cuando abre las puertas a validar y respaldar las acciones ejercidas por titulares que para su beneficio exclusivo -en contra de sus propios actos y obligaciones- pretenden obviar las constancias y deberes que adquirieron al formar parte del régimen y que constan en la escritura matriz, los planos, la fe pública registral y la voluntad de los cotitulares del régimen.

III

En el caso ante nuestra consideración la escritura matriz del condominio dispone que los pisos tres al quinto consisten de un apartamento de cuatro habitaciones con tres baños completos, espacio para armario, pórtico, terraza, y cocina equipada. **Además establece específicamente que existe un vestíbulo que da acceso a la entrada del elevador, las escaleras, el armario de mantenimiento y los incineradores.** Esta lee como sigue:

> Typical floor plan (level three (3) to five: These three levels provide one (1) four-bedrooms apartment each, with three (3) complete bathrooms, ample closet space, porch, terrace, and fully equipped kitchen with built-in appliances. **The lobby contains the elevator opening, the stairways, a janitorial closet and the incinerator.** Énfasis suplido.

A su vez, el apartamento de los esposos Nobbe-Batista está delimitado por la escritura matriz y los planos presentados al Registro de la Propiedad. Particularmente,

el apartamento posee linderos con el área del vestíbulo

cuyo uso –según consta en las instancias del Registro, los

planos y la escritura matriz– corresponde a un elemento

común limitado. De ello, nuevamente, surge que en esa área

se encuentran las escaleras y el hueco de los

incineradores. La escritura matriz delimita los  linderos

del apartamento de la siguiente forma:

> -----NORTH: Eight point Fifty (8.50) lineal feet equivalent to Two point Five Hundred Ninety One (2.591) lineal meters with common elements of the building and proper elements of the apartment such as concrete balcony wall separating it from the exterior space and Twenty Two point Fifty Eight (22.58) lineal feet equivalent to Six point Eight Hundred Eighty Two (6.882) lineal meters with common elements of the apartment such as concrete load bearing walls, block partitions and columns **separating it from the restricted common lobby the stairways and the incinerators shaft.**

> -----SOUTH: Sixty Six point Seventy Five (66.75) lineal feet equivalent to Twenty point Three Hundred Forty Six (20.346) lineal meters with common elements of the building and proper elements of the apartment such as concrete load bearing walls, columns, block partitions windows separating it from the exterior space. There are two terraces on this boundary with doors providing access from the exterior space, and Twelve point Eighty Three (12.83) lineal feet equivalent to Three point Nine Hundred Eleven (3.911) lineal meters with common elements of the building and proper elements of the apartment such as concrete load bearing walls separating it from **common elements of the building namely the elevators shaft and service door of the apartment separating it from and providing access to the restricted common lobby of the respective floor.**

> -----EAST: One Hundred Thirteen point Twenty Fice (113.25) lineal feet equivalent to Thirty Four Point Five Hundred Nineteen (34.519) lineal meters with common elements of the building and proper elements of the apartment such as columns, concrete loadbearing walls, block partitions and windows separating it from the

exterior space and facing McLeary Avenue. There are three (3) balconies and One (1) terrace on this boundary with door providing access from the inside of the apartment.

-----WEST: Eighty Two point Eighty Three (82.83) lineal feet equivalent to Twenty point Two Hundred Forty Seven (25.247) lineal meters with common elements of the building and proper elements of the apartment such as concrete walls separating it from exterior space. This boundary consists of two (2) terraces that run alongside the boundary and Sixteen (16) lineal feet equivalent to Four point Eight Hundred Seventy Seven (4.877) lineal meters with common elements of the building and proper elements of the apartment such as incinerators shaft, stairways and the main entrance door to the apartment separating it from and providing access to **the restricted common lobby of the respective floor.** Énfasis suplido.

A su vez, la escritura matriz del condominio establece que el vestíbulo es un elemento común limitado al establecer como sigue:

COMMON AREAS AND FACILITIES

-----(e) The following facilities located in each one of the six (6) upper floors are RESTRICTED COMMON AREAS AND FACILITIES restricted to the apartment units of each respective floor:----------------------------------------------------------(1) **A lobby providing access to the elevator and to the stairway from or to the apartment units on the respective floor.**

Lo antes expuesto refleja que no existe divergencia entre las constancias que hace la escritura matriz respecto a las limitaciones del apartamento y el vestíbulo como un elemento común limitado. De igual forma, resalta que el área del vestíbulo contiene y da acceso a otros elementos importantísimos para la seguridad del condominio

como lo son las escaleras del edificio. A su vez, ubica el armario del área de mantenimiento y el hueco que da hacia los incineradores.

Los esposos Nobbe-Batista conocían y se obligaron al régimen una vez advinieron titulares del apartamento del quinto piso. Tanto es así que, conscientes de ello, sometieron ante los demás titulares los cambios realizados para su aprobación. Celebrada la asamblea a tales efectos, los titulares no consintieron unánimemente. En ese momento, los esposos Nobbe-Batista impugnaron el acuerdo alcanzado por entender que se debieron mantener las referidas modificaciones. En ningún momento reclamaron que el vestíbulo les pertenecía privativamente. Su interpelación consistió en que los cambios en nada afectaban a los demás titulares ya que el uso del área es exclusivo de ellos.

La mayoría de este Tribunal juzgó que el área en cuestión es privativa solo porque beneficia a uno de los titulares. Es nuestra posición que ello es contrario a la Ley de Condominios. Con ello se avala el cambio del destino y uso asignado en la escritura matriz y los planos presentados ante el Registro de la Propiedad sin cumplir con el requisito de unanimidad dispuesto en la Ley de Condominios. Más aún, se le permite a los esposos Nobbe-Batista adquirir sobre un elemento común de carácter limitado una titularidad que no les pertenece, sin considerar que éstos se obligaron a cumplir con el régimen

de propiedad horizontal una vez advinieron en titulares de su apartamento.

Es nuestro criterio que la totalidad de los titulares adscritos al régimen de propiedad horizontal están facultados para destinar un elemento común al disfrute de un solo titular sin que con ello se entienda que éste cambió su naturaleza de elemento común a uno privativo. Por tanto, no vemos razón alguna para variar ello sin el consentimiento de todos los titulares conforme dispone el Art. 2 de la Ley de Condominios, *supra*.

De otra parte, nos preocupa grandemente que las modificaciones realizadas por los esposos Nobbe-Batista tienen el efecto de privatizar elementos comunes como son las escaleras, incineradores y armario de mantenimiento ubicados en el vestíbulo. Sobretodo, elementos que contribuyen a la seguridad del condominio. Recordemos que en De la Cruz v. Toro Sintes, 112 D.P.R. 650 (1982) este Tribunal adjudicó una controversia en la cual -al igual que en el caso ante nos- al constituirse el condominio bajo el régimen de propiedad horizontal se reservó el uso exclusivo de la azotea al titular de un determinado apartamento. Allí reiteramos la obligación de los adquirientes de un condominio bajo el régimen de propiedad horizontal de acatar lo dispuesto en la escritura de constitución como pacto al cual se adhieren. Íd., pág. 657. Sin embargo, expresamos que ese derecho de uso exclusivo no implica conceder al titular de dicho apartamento un derecho absoluto e irrestricto en perjuicio

del bienestar y seguridad de todos los condóminos. Impedir el acceso a los pasillos, escaleras y ascensores del edificio es contrario a la seguridad de los ocupantes del condominio. Íd., pág. 658.

Al ubicar un portón en el área del ascensor los esposos Nobbe-Batista actúan contrario a las obligaciones que adquirieron conforme surgen de las constancias del Registro de la Propiedad e impiden el acceso a otros elementos comunes que se encuentran en el vestíbulo del quinto piso. Incluso imposibilitan el acceso a las escaleras ubicadas en el vestíbulo atentando contra la seguridad del resto de los titulares.

Recordemos que la propiedad horizontal fomenta y está dirigida a estimular la utilización de terrenos y construcción en Puerto Rico. La interpretación de la Ley de Condominios debe responder a la consecución de esa política pública, por lo que debe ajustarse a la esencia de la horizontalidad: la coexistencia de diversos pisos de dominio exclusivo con la participación inescapable de ciertos elementos. Le corresponde a este Tribunal velar y encausar las controversias jurídicas en torno a la Ley de Condominios de forma tal que no se convierta en un "nido de conflictos que amarguen la realización del ideal del hogar propio". 10 Diario de Sesiones de la Asamblea Legislativa (Cámara), T. 3, pág. 1574 (1958).

IV

Por los argumentos antes expresados, disiento respetuosamente de la Opinión Mayoritaria y la Sentencia

emitida por el Tribunal, en cuanto al dictamen de que el área del vestíbulo es privativa de los esposos Nobbe-Batista. En consecuencia, ordenaría a los esposos Nobbe-Batista a restituir el vestíbulo del quinto piso a su estado original.

LUIS F. ESTRELLA MARTÍNEZ
Juez Asociado